Zachary Alexander Karas. Good morning, Your Honors. John Lenihan on behalf of the Appellant, Mr. Karas, and may it please the Court. There are two issues that I've raised in this. I'll try and cover them as briefly and I hope as succinctly as possible. The first one is the district court's ruling that a case agent, actually not a case agent, but an ATF agent, was sufficiently qualified as an expert to give an expert opinion on whether or not the Molotov cocktails that were seized in this case were actually destructive devices based on how much was in them. That was essentially the defense case, and we were disputing while there was testimony concerning the conditions of the bottles when they were seized, there was also a video which was admitted and was video number 38 in which we were arguing that based on that, looking at the condition of the bottles, there was not enough in there. At the motion in the limine hearing, I had made an objection based on the use of the agent without showing an actual, his reliability. The district court found that the subject matter of what he was going to testify to could be the basis for an expert opinion, but then ruled at the motion in limine that it was sufficiently reliable but that there would be a later voir dire hearing. That voir dire hearing actually took place in front of the jury. There was no separate voir dire hearing, even though this court has, and I'm looking at Hulging, which the government has cited and I think gives a very good template on how this should have been done, that there should have been a separate reliability hearing outside the presence of the jury. And the basis on this was because the agent had essentially been involved in the military. He had done a lot of bomb diffusions, mine, trying to find unexploded bombs in mines, but there really was not a basis on which his expertise was based on incendiary devices other than he just said, well, it has some kind of liquid, and in my opinion that makes it a destructive device. So ultimately the actual voir dire hearing took place in front of the jury. I was actually, I had objected to the use of the agent as an expert, but instead of having a separate voir dire hearing outside the presence of the jury, this essentially became the basis on which the district court found that he was sufficiently reliable. So the first basis on this, ultimately, and looking at Hulging, there's a whole, I mean, there's a whole series of issues that arise in this case, or would arise not on the particular use of experts who are not basing it on scientific knowledge, who are basing it on their own personal. But the error in the case was that the district court presumptively found that the motion in limine hearing without a separate voir dire hearing that this was sufficiently reliable, and then that that actual reliability hearing occurred in front of the jury, where it should be outside the presence of the jury to see whether or not this person is in fact an expert. But then if you look at the basis on which the expert gave his basis of knowledge, it was not based on a familiarity or reliability as to the issue in this case. Even assuming it was an error, I mean, wasn't it a harmless error? I mean, this is a Molotov cocktail. Most people understand what a Molotov cocktail is. Well, here's the issue. Is a Molotov cocktail, calling it a Molotov cocktail, does that make it, in fact, a destructive device? And so the issue with trying. It sure seems like it. You put gasoline, light a fire and throw it, it will destroy things. I think the issue is if you're going to just use the statutory definition, then essentially any kind of reliability as to whether this would be destructive, that's not sufficient enough to do it. What I think you're bringing out, though, there were videos that show that there was a demonstration of what they considered to be something that was similar to what was seized, and that those obviously could be considered destructive devices. But it was contested at trial whether or not that was actually the amount. But when I look at the record here, I see among other evidence that Mr. Karras admitted that he put gasoline in bottles with the intention to light things on fire. He admitted he had cocktails. And when the FBI asked if the cocktails had been made, they were made and ready to go. Mr. Karras said yes. If they had been made and were ready to go, he said yes. I then see some testimony here from law enforcement officers that they saw liquid in the bottles and smelled gasoline, and the bottles contained between one half cup and one full cup of gasoline. And then I think finally a lay officer testified that a cocktail is a destructive device no matter how much gasoline is inside of it. I guess to Judge Lee's question, why isn't this evidence enough for the government to meet the burden on harmlessness, even if there was an issue with the expert? Well, again, the one issue that came down at trial was whether or not the actual condition of these bottles, and we were saying from the basis of the video as to when they were actually seized, that there's a point where it's been seized and they're putting them in the back of a truck, that if you look into the bottles that there isn't enough there to make it. Now, obviously, and this will perhaps segue into my second argument, the issue was really going to be there was a contested factual issue as to whether the amount of gasoline or whatever was in it would make it destructive. The agent's testimony ultimately came out to saying, I'm an expert, and as far as I'm concerned, it doesn't make any difference how much is in it. So essentially by believing that expert, it removed what was really the one contested issue. Thank you. Can you move on to the acceptance of responsibility? Okay. The second one is, and I think the Court's laid out, when Mr. Karras was arrested, he admitted what he had done. He admitted what he thought he was planning on doing. He also then said, when I got there and saw the basis of what was happening, I decided not to use it. The only contested element in this case was whether or not they were actually destructive devices. And even him saying that he didn't have the intent, he did say he had the intent. If he said he hadn't had the intent, that would not have made a difference in this case, where they are actually constructed. So the ultimate basis on which the District Court denied, and in fact the only basis at sentencing was that in fact he contested an issue. And I think the Court, if you look at more recent decisions of this Court, that's not the only criteria under the guidelines. The issue is also contrition. And I think based on his statements both at the time he was immediately arrested and then the next week, he did indicate that there was a level of contrition. And I'm asking the Court also in the further excerpts of record, on page 36, I think it was very clear what had caused him, why he realized this was a mistake. And if that's not contrition, I don't know what is. The case that I'm really relying on, the recent one, is Long, which was a case that involved, it was a Mann Act or a Hobbs Act, or it was an issue about robbery. But the issue at that case, he contested whether there was the element of interstate commerce. He lost. District Court did not give it. But this Court on review said that is not sufficient to deny it. That's why I would ask you to do that on this case. What takes this case out of one where we're reviewing for abuse of discretion? Well, on the issue, well, first of all, on the abuse of discretion concerning the 702 hearing. No, not 702. Okay, just on the acceptance. Yes, yes, please. Okay. Well, the abuse of discretion ultimately comes in that the District Court is giving the entire basis on denying acceptance. The statement in the guidelines that say the fact that someone contests an element is a basis on which a court could deny it. But that discretion now is not just entirely based on that. If the Court says this is the be-all and end-all and I'm not going to continue anything further, then that is an abuse of discretion because there was something in this case. And the one difference it makes based on later decisions by this Court is contrition. And he did demonstrate contrition. So the error is in saying that that's just the fact that you contested something eliminates it as a possibility later on. This is de novo review, isn't it? Well, it's a de novo review by you, yes. In other words, the application of the, well, the application, correct. Because it's a question of applying the guidelines. Correct. And so if so, well, okay, here's. I think Deborah makes an argument otherwise, but I'm just trying to, I mean, it's either application of the guidelines and the reduction or it's whether or not there was a question on what the judge did. But it seems to me that there's, and I want to ask the government's counsel about this because I think they are arguing that U.S. v. Daychild applies. And I guess just let me give you a chance to respond to that before. Well, I'm saying that Daychild has to be considered in light of other subsequent cases, and Long being the other one that shows that where the issue is, if it's a de novo standard, which I would love it to be, right, it's going to be whether or not this is a correct following of the application notes given the context of this court's later decisions in which contrition can be a basis. But if it is an abuse of discretion, and I don't want to get mired into that particular. Well, you're out of time, so I'll give you a minute or two for rebuttal. Okay, I'll save it for rebuttal. Thank you. Good morning, Your Honors, and may it please the Court. Jacqueline Stahl for the United States. I'll pick up where we left off with the discussion with my colleague on we do not believe that the district court here abused its discretion in declining to apply the acceptance of responsibility adjustment. Well, I'm not sure it's abuse of discretion because Daychild, which is the case you cite, that was applying clear error. Correct, Your Honor. Right. This case is a question of whether or not, I mean, and it was undisputed in Daychild, whether or not that was an application of clear error, I mean, so whether or not that's an abuse of discretion standard. Here, and I think we have a history of cases that show, I mean, that when you're questioning the application of the guideline, especially in a case like this where unfortunately we have a number of cases where it looks like the judge may have misunderstood what the law was with respect to applying the guideline. So I guess I'm just trying to figure out why you think Daychild applies and not de novo review. Your Honor, I think if the district court here had said categorically that if you go to trial you can never get acceptance, we'd be in a very different posture. But here we're looking at the district court after presiding over the trial, having viewed the statements of the defendant, having viewed his post-trial and sentencing allocution and letter, that the district court was applying the correct rule from the application notes of 3E1.1, which state that the, sorry, were you? No, I'm sorry. Go ahead. I have the language here of the court, so maybe we can just review that together. Of course. The district court said, I would respectfully decline to adjust downward for acceptance responsibility because that would require a defense that is not based on matters of fact, factual guilt. And here the defense, which, of course, Karras was entitled to present was one where Karras contested the elements of the offense based on the underlying facts of the case, and so it does not fall within the acceptance of responsibility, and I would decline to adjust downward for acceptance. You think that's clear, that he didn't think there was a categorical bar? Yes, Your Honor. If you look at footnote 5 of Ochoa Gaten, this court says that the key is looking at whether you put the government to its burden of proof or you falsely deny criminal conduct. And here the defense falsely denied criminal conduct by saying these were not destructive devices. So if you look at Rojas Flores, where the defense there was that the sharpened objects that the prisoner had were not under the legal definition weapons, the court there said that was a legal defense, a purely legal defense. Here, as my colleague admits, this was about the facts of the case, whether there was sufficient gasoline in the devices. So if the argument below had been Molotov cocktails can never be destructive devices under the statutory scheme, maybe that would be a legal defense. But that wasn't the defense here. The defense put on was challenging the facts of the case, was challenging how much liquid were in the bottles, cross-examining the witnesses on that, and then arguing to the jury, you can look at Exhibit 10 yourself, which is the picture of the bottles with the liquid. You don't have to believe Detective Wilson's red lines on 10A that this was the amount of gasoline. You, the jury, get to decide the facts, the contested facts in this case, which were was there sufficient gasoline in these bottles to create a weapon which is designed to ignite property. And in this case, the jury found that there was sufficient gasoline. Did the U.S. Attorney's Office or the Probation Department before the District Court mention to the District Court that it had discretion to give reduction for acceptance of responsibility despite the fact that he contested some of the factual issues? Yes, Your Honor. So first, the defense filed a sentencing memo which addressed acceptance and made the argument that even post-trial, the court should look at his pretrial statements. Then the government filed a sentencing memo laying out the law on 3E1.1, the comments. And then the PSR, in saying they didn't have sufficient information to make that decision, pointed out again the requirements under 3E1.1. Substantively, what did the Probation Department say? Remind me of that. There was a little bit of confusion because there was the original PSR in the addendum. But they said that they didn't have sufficient information because they weren't aware. They hadn't sat through the trial. They didn't know the facts of the case to decide whether he put on a factual disputed trial. I'm summarizing. I don't have the exact language to quote here. I apologize. Thank you. So looking at the district court's decision here, I do want to turn back to Judge Lee's question. Neither of the parties raised acceptance of responsibility at the hearing. So the district court on its own, after saying that it had read the papers, made that decision and made that ruling. Turning to the expert witness, the district court did not abuse its discretion by admitting expert testimony from Officer Smith. It made explicit findings both at the motion and liminate hearing and after extensive voir dire. On reliability? Yes, Your Honor. And the government acknowledges that no party, including the court, said the word reliability at the motion and liminate hearing. And if this court were to decide that the word has to be said, then yes, we wouldn't be able to rely on the motion and liminate hearing. But here the district court relied on the definition of reliability, that the application of extensive experience can be a reliable method and experience can be reliable. So here the district court at the motion and liminate hearing echoed the prosecution's comments, which were about his military experience, and then explained that the application of that experience above and beyond the common person. What's your best case to support that this was an explicit reliability finding? I think there's probably a harmlessness element to this that I think, in my view, probably should focus on. But I'm curious what your best case is that this is equivalent to the reliability finding. As to the motion and liminate hearing, I would rely on the definitions in Holguin. But if we look at El Torre, which the district court actually cited at excerpts of Record 52 when the court laid out how it was going to deal with this issue, El Torre had a motion and liminate hearing, said that we're going to have voir dire in front of the jury. They had extensive voir dire, which was about relevance and reliability. The defense renewed an objection under Daubert, which was overruled. And this court said that was satisfactory to meet the gatekeeping requirements under Daubert. And so in this case, the district court did exactly that, made a preliminary ruling of the motion and liminate, which I understand the court's concerns, even if that wasn't explicit, then held voir dire in front of the jury where defense counsel probed reliability extensively before renewing its objection under 702. So under El Torre, by overruling that objection, the district court was explicitly finding that this expert was qualified under Rule 702, relevance and reliability. And unless the court has any other questions, the United States respectfully requests that you affirm the conviction and sentence in this matter. Thank you. I can answer the court's question concerning what the recommendation was from probation and acceptance. Basically, they said they looked at the note, they said the conviction by trial does not automatically preclude a defendant from consideration for reduction of acceptance and responsibility. A defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct, even though he exercises his constitutional right to trial. That may occur where a defendant goes to trial. Sorry, the false gossip technology, of course, just blanked out on my screen. But they then in the PSR specifically then say because he contested an element that that was in fact he is precluded. They then noted my objections when I filed objections saying that he should be given acceptance, and they came back and said, we're still taking the same position. There was a question about why he took it to trial, and then what I actually indicated was I was trying to see if the government would offer a deferred prosecution in this case. But we eventually did take it to trial. That was what, and given that information, probation wasn't sure whether or not they would, what they would recommend. But the final recommendations in the PSR and in the addendum was that it was precluded under the guidelines. So in response to the court's question, and I hope it is, a de novo review, I think that this is an error by the district court in that saying I can't, I am precluded from giving this adjustment. Obviously it's only minus two, not three, because he did go to trial, and the government did not recommend an additional level. But under that interpretation of the guidelines, it is an error. Thank you. Thank you. Thank you both for your oral argument presentations. The case of United States v. Zachary Alexander Karras is submitted.
judges: MURGUIA, Parker, LEE